IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 4:99-cr-70105 | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| ANTHONY CHARLES BROWN, | ) | By: | Hon. Robert S. Ballou |
| Petitioner. | ) | | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Petitioner, Anthony Charles Brown, filed a motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel during the criminal prosecution of him for possession with an intent to distribute more than 50 grams of crack cocaine. The matter is now before me by referral under 28 U.S.C. § 636(b)(1)(B). I have reviewed the record of the criminal proceedings and conducted an evidentiary hearing on June 13, 2012. I conclude that Petitioner is not entitled to relief and **RECOMMEND** that Petitioner's § 2255 motion be **DENIED**.

### I.

A. **RELEVANT FACTS OF THE CRIMINAL PROCEEDINGS**

A federal grand jury returned a one-count indictment against Petitioner in November 1999 for possession with intent to distribute more than five grams of crack cocaine. The charges stem from a criminal investigation in July 1999 that began when the Virginia State Police were informed that an Amtrak passenger named "Allen Green" purchased a ticket under suspicious circumstances to travel from New York to Danville, Virginia. After the train arrived in Danville, the State Police intercepted the passengers as they walked toward the Amtrak terminal and asked each passenger to produce a ticket. Petitioner could not find his ticket but identified himself as

Anthony Brown and explained that he boarded the train in New York and was traveling to Danville to visit relatives. Petitioner consented to a search of his two-gift wrapped packages in which officers discovered three blocks of crack cocaine weighing a total of 1.3 kilograms. Officers arrested Petitioner and found in his possession a ticket for "Allen Green."

Virginia authorities charged Petitioner with possessing cocaine with intent to distribute and released him on $50,000 bond. Petitioner did not appear at his preliminary hearing in September 1999 and became a fugitive from the state prosecution. The federal grand jury charged Petitioner in November 1999 with possessing with the intent to distribute more than five grams of crack cocaine. Petitioner remained a fugitive from federal prosecution until March 2008 when federal officers arrested him on the 1999 indictment. The grand jury returned a superseding indictment in May 2008 charging Petitioner with possessing with intent to distribute fifty or more grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

**1. The Motion to Suppress**

Petitioner's counsel moved to suppress the approximately 1,331 grams of crack cocaine seized from Petitioner's bags. At the suppression hearing held on July 29, 2008, Petitioner testified about his conversations with the officers at the train station, the police dog sniffing his possessions, and the circumstances of his arrest. Petitioner adamantly denied that he consented to having his possessions searched. During cross examination, Petitioner testified that he stole the gift-wrapped packages from someone on the train and thus, could not have known that the packages contained crack cocaine. (Suppression Hr'g Tran. 13-16, 30-31.) The presiding district judge asked Petitioner about the ownership of the packages. Petitioner answered the court's questions stating that he unknowingly possessed the crack cocaine solely because he stole

2

another passenger's bag containing the gift-wrapped packages. The court denied the motion to suppress finding that Petitioner lawfully consented to a search of his possessions and that Petitioner's testimony of having stolen the packages was a "fantastic story" which "defie[d] credulity."

Counsel subsequently filed a motion to dismiss the superseding indictment on a statute of limitations ground, which Judge Kiser denied on October 7, 2008. Two days later, Petitioner entered a guilty plea to the sole count of the superseding indictment without the benefit of a plea agreement.

## 2. Sentencing

At sentencing, counsel requested a downward departure of the United States Sentencing Guidelines ("USSG"). Counsel argued that the Court should classify Petitioner as a category I offender instead of a category II offender because Petitioner had only one prior misdemeanor conviction which was more than ten years old. Counsel also objected to the recommendations in the Pre-Sentence Report ("PSR") that the district court deny Petitioner credit for accepting responsibility and penalize him for obstructing justice by lying to the court and probation officer.[1]

Petitioner's fiancé testified at the sentencing hearing that she had known Petitioner for three years, that they had one child from their relationship, and that she was shocked to learn in March 2008 that Petitioner had been a fugitive for almost nine years. Petitioner testified that he

---

[1] The probation officer noted in the PSR that Petitioner told different versions of facts during the suppression hearing and during the probation officer's interviews. The probation officer explained that Petitioner acknowledged during an October 16, 2008 interview to possessing the crack cocaine. However, Petitioner recanted this statement during a second interview on November 14, 2008 when he said that he claimed that he stole the packages from a drug dealer in New York, but did not know what kind or quantity of illicit drugs were in the bags.

3

lied during the suppression hearing and that he "ran" from prosecution in 1999 because he was afraid of going to jail.

The court reduced Petitioner's criminal history category to I, but added two points to the base level offense for obstructing justice and denied any credit for acceptance of responsibility. Judge Kiser noted that Petitioner deceived his fiancé about his fugitive past during their entire relationship, which "fit[] a pattern that [Petitioner] followed." Judge Kiser found Petitioner's behavior exhibited a "textbook example" of obstructing justice and imposed a prison term of 188 months.

**B.     PETITIONER'S § 2255 MOTION**

Petitioner timely filed the instant § 2255 motion asserting claims of ineffective assistance of counsel. First, Petitioner contends that Counsel failed to communicate a plea offer from the United States and that he would have accepted the plea offer. Second, Petitioner claims that because he believed the Government had not made any plea offer, he testified at the suppression hearing to suppress the drug evidence at the insistence of his trial counsel. Finally, Petitioner claims that he did not know the extent to which his false testimony could negatively affect his sentencing guideline range. Petitioner bases this claim on a letter dated July 21, 2011, that he received from Counsel after the Court of Appeals rejected his appeal. Counsel stated in the letter:

> Although I don't think that further appeal will be of any benefit to you, you might have a chance at getting relief with a 2255 petition . . . alleging constitutional violations. In addition to the violations raised in the appeal, you can also allege ineffective assistance of counsel. Although I worked hard on your case, in hindsight, I don't believe I advised you, before you testified at the Motion to Suppress [hearing], that points would be added to your offense level if the Judge believed you were lying; nor did I advise

4

> you of the potential effect of not getting credit for acceptance of responsibility. I know I told you that you shouldn't lie and that new charges could be filed for perjury if you testified falsely, but I didn't explain the consequences on your potential sentence. Had I done so, you may have decided <u>to accept the plea agreement originally offered</u>, <u>which would have given you less time</u>. Of course, you may not have agreed to take a 10-year sentence without even trying a motion to suppress, but you would have been able to make a more informed decision if you had all the information.

(Counsel's Letter (no. 86-2) 2 (emphasis added).)

### C. THE EVIDENTIARY HEARING

The credible evidence at the evidentiary hearing held on June 13, 2012 established that the attorneys in Petitioner's criminal proceedings were experienced in handling criminal matters in federal court. Petitioner's counsel serves as the First Assistant Federal Public Defender in this district and has defended criminal cases for twenty-five years. The Assistant United States Attorney ("AUSA") has worked as a federal prosecutor in this district since 1999 when Petitioner's criminal proceedings began.

Petitioner testified at the evidentiary hearing that he wanted to plead guilty to the charge in the original indictment, which had a statutory sentencing range of 5 to 40 years' imprisonment. Instead the grand jury returned a superseding indictment charging Petitioner with an offense which carried a statutory sentencing range to 10 years to life imprisonment. Petitioner asked Counsel to obtain a plea agreement with the Government for the original five year sentence utilizing, if necessary, the "safety valve" provision,[2] despite Counsel's advice that it

---

[2] The safety valve allows a court to impose a sentence pursuant to the USSG and without regard to a statutory minimum sentence if the court finds at sentencing that: (1) the defendant has no more than one criminal history point; (2) the offense did not involve violence or a dangerous weapon; (3) the offense did not result in death or serious bodily injury; (4) the defendant was not an organizer or supervisor and was not engaged in a continuing criminal enterprise; and (5) the defendant provided truthful information and evidence regarding the offense. 18

5

was highly unlikely that she could obtain a five-year sentence for Petitioner. Faced with a charge with a ten-year mandatory minimum sentence, Petitioner elected to pursue the motion to suppress the drug evidence on the grounds that the State Police conducted an illegal search. If successful, the suppression motion would have had the net effect of defeating the drug charge altogether. Counsel explained to Petitioner that the chances of success on the suppression motion were low despite the arrest having occurred nine years earlier and the possibility that the investigating officers could forget some pertinent facts.

Petitioner claimed that he did not want to testify at the suppression hearing, but counsel advised him that his testimony was necessary to succeed on the suppression motion. Ultimately, Petitioner agreed to testify following "Counsel's advice." Notably, Petitioner acknowledged at the evidentiary hearing on his § 2255 motion that Counsel admonished him to tell the truth and that lying under oath would constitute perjury and cause a longer sentence. Petitioner claims, however, that Counsel did not "prepare" him to testify during the suppression hearing.[3] In retrospect, Petitioner claims he would not have pursued the motion to suppress if he understood from Counsel how falsely testifying[4] would have impacted the sentencing guidelines calculation. The AUSA rebuffed any effort by Counsel to get a plea agreement after the suppression hearing. Instead, the AUSA testified that Petitioner could plead "straight up" without the benefit of a plea agreement.

---

U.S.C. § 3553(f); USSG § 5C1.2(a). The PSR assigned Petitioner three criminal history points.
[3] Petitioner did not explain what preparation he felt was necessary for him to testify truthfully at the suppression hearing. In fact, Counsel prepared Petitioner to the extent she advised him to truthfully recite the facts of the stop, search, and arrest.
[4] Petitioner admitted at the evidentiary hearing that the crack cocaine and bags he carried off the train were his and were not stolen.

6

Counsel testified at the evidentiary hearing regarding her representation of Petitioner and her letter after the representation concluded. Counsel testified that she advised Petitioner about his obligation to tell the truth and the possible penalty for perjury, but did not specifically advise Petitioner that false testimony could negatively impact his sentencing guideline calculations. Counsel also explained that she erroneously suggested in her letter that the United States made a plea agreement offer. In fact, both the AUSA and Counsel confirmed that the Government never made either a written or oral plea offer. The AUSA reiterated his refusal to discuss a plea bargain in this criminal prosecution because Petitioner fled prosecution in 1999 and remained a fugitive for nine years. In those circumstances, the AUSA urges the court to reject any request of acceptance of responsibility where a criminal defendant has been a fugitive and lied to the court.

## II.

Courts and the public can presume that a defendant stands fairly and finally convicted after conviction and exhaustion, or waiver, of any right to appeal. See United States v. Frady, 456 U.S. 152, 164 (1982). Nonetheless, federal convicts in custody may attack the validity of their federal sentences via 28 U.S.C. § 2255 addressing jurisdictional errors, constitutional violations, proceedings that resulted in a complete miscarriage of justice, or events that were inconsistent with the rudimentary demands of fair procedure. United States v. Timmreck, 441 U.S. 780, 784 (1979). A petitioner seeking relief under § 2255 must prove that: (1) the sentence violated the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence imposed exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

To prove ineffective assistance of counsel, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984), requiring a petitioner to show (1) "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of reasonableness, Id. at 687-88, and (2) that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id.

If Petitioner fails to satisfy either prong of the Strickland test, a court does not need to inquire whether he has satisfied the other prong. Id. at 697. "[A]n attorney's acts or omissions that are not unconstitutional individually cannot be added together to create a constitutional violation." Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998). Strickland established a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. "Judicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the [challenged] conduct from counsel's perspective at the time." Id. "[E]ffective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978).

After reviewing the record and the relevant law, I find that a plea offer did not exist and that Counsel did not render ineffective assistance by not specifically explaining how false testimony would affect the sentencing guideline calculation.

8

### A. NO PLEA OFFER EXISTED

No credible evidence exists to suggest that the Government made a plea offer. The files of both Counsel and the AUSA contain no written plea offers or any contemporaneous notes reflecting an oral offer from the Government. The AUSA handling the case testified quite clearly to his established practice not to offer a plea agreement in a single count indictment and to make no offers to defendants, such as Petitioner, who have fled to avoid prosecution and lied to the court in oral testimony. Counsel's passing reference to a plea agreement in her letter to Petitioner is insufficient to establish that the Government made any plea offer. Further, Petitioner offers no evidence of the terms of any such offer.

### B. COUNSEL DID NOT RENDER INEFFECTIVE ASSISTANCE ABOUT THE IMPACT PETITIONER'S LIES MAY HAVE HAD ON USSG CALCULATIONS

Petitioner chose to challenge the Government's search and seizure of the approximately 1,300 grams of cocaine seized from Petitioner's luggage. Counsel advised Petitioner of his duty as a witness to testify truthfully. Petitioner now attempts to avoid the impact of his decision by claiming that Counsel was constitutionally ineffective by failing to advise him that obstructing justice (i.e. telling a fanciful story) could negatively impact the sentencing guideline calculations. The court rejects this argument, and this claim must fail. Notwithstanding this advice and having taken the oath as a witness, Petitioner testified to a factual scenario which the presiding judge found lacked "credulity" and which he described as a "fanciful story." Petitioner evaded prosecution on his drug charges for nine years and deceived his fiancée about his past. The court considered the totality of this evidence, and not just Petitioner's misleading testimony, when it

9

rejected Petitioner's request for an acceptance of responsibility and added two points to his sentencing guidelines for obstructing justice.

Petitioner argues in the § 2255 motion that Counsel's failure to communicate a plea offer caused plaintiff to testify at the suppression hearing and receive a sentence higher than the statutory minimum sentence. (Pet'r's Br. Supp. § 2255 Mot. (no. 87) 5-6.) The court has determined that the government never made offered a plea agreement to Petitioner, and thus, this claim must fail.

Considered more broadly, the court construes Petitioner's second ineffective assistance of counsel claim independent of whether the government ever made a plea offer.[5] See Haines v. Kerner, 404 U.S. 519, 520-21 (1972). So construed, Petitioner asserts that Counsel allegedly rendered ineffective assistance by failing to explain the impact Petitioner's false testimony would have on USSG calculations, irrespective of the existence of a plea offer. Petitioner relies on Roe v. Flores-Ortega, 528 U.S. 470, 478-80 (2000), to argue that Counsel had a duty to consult with Petitioner about the benefits and costs of testifying at a suppression hearing and the effect the testimony might have on the USSG. Flores-Ortega recognizes that an attorney has a duty to consult with a defendant about filing a notice of appeal and that an attorney who fails to file an appeal despite a defendant's request is per se ineffective. The Supreme Court of the United States acknowledges that "[c]ounsel's failure to [file a notice of appeal] cannot be considered a

---

[5] Petitioner never filed an Amended § 2255 motion or moved to amend the § 2255 motion, and the court does not act as Petitioner's advocate, sua sponte developing statutory and constitutional claims Petitioner did not clearly raise in the § 2255 motion and its incorporated brief. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). See also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff). For example, Petitioner never developed a claim in the § 2255 motion or brief that Counsel did not advise Petitioner about pleading guilty or that Counsel failed to enter into plea negotiations. The court may liberally construe Petitioner's claims already presented in the § 2255 motion or brief, but "liberal construction" does not allow Petitioner to invent new claims not presented in the pleadings.

10

strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." Id. at 477 (emphasis added).

Petitioner's argument is not persuasive because Flores-Ortega applies to a defendant's right to appeal, not to counsel's strategic decisions about how to best challenge the United States' case-in-chief. See, e.g., Strickland, 466 U.S. at 690-91 (noting that counsel's tactical decision with which a defendant disagrees cannot form the basis of an ineffective assistance of counsel claim); Tevlin v. Spencer, 621 F.3d 59, 67 (1st Cir. 2010) (recognizing the filing of a motion to suppress may be a strategic decision); United States v. Cavitt, 550 F.3d 430, 440 (5th Cir. 2008) ("If a tactical decision is conscious and informed . . . [it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."); Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."); Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998) ("The decision whether to file a . . . motion to suppress . . . is a classic tactical decision."); Phyle v. Leapley, 66 F.3d 154, 159 (8th Cir. 1995) (including the decision whether to move for a mistrial in a list of examples of "virtually unchallengeable" strategic decisions). Here, the decision to move to suppress the seized drugs and how to best present that argument lies at the heart of an attorney's strategic decisions of how to defendant a client, and I find no legal or factual basis to expand Flores-Ortega's reach to those decisions.[6]

Counsel advised Petitioner that lying under oath could increase the length of his sentence. Nevertheless, Petitioner told a "fantastic story" that "defie[d] credulity." Petitioner admitted

---

[6] Even if the Flores-Ortega standard applied, Counsel and Petitioner both agree that Counsel "consulted" with Petitioner about how perjury would lengthen Petitioner's incarceration.

11

during the evidentiary hearing on his § 2255 motion that he testified untruthfully. Petitioner disregarded the oath of a witness and the advice of Counsel to tell the truth and suffered a longer prison sentence as a consequence. Petitioner's hindsight or desire for a better outcome is not grounds to vacate his sentence, and he fails to establish a Sixth Amendment violation by his counsel.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." <u>Strickland</u>, 466 U.S. at 686. The Sixth Amendment imposes a general, not specific, requirement: that counsel make objectively reasonable choices. <u>Id.</u> at 688. Counsel gave clear-headed and correct advice to Petitioner about his obligations as a witness. This advice supports the proper function of the adversarial process which demands that every witness tell the truth. Perhaps, in hindsight, counsel may have wished that she advised Petitioner that lying could impact his guideline calculation as suggested in her letter. However, there is nothing objectively unreasonable with an attorney advising her client not to lie under oath and that doing so could result in a prosecution for perjury. The failure to advise of other consequences of not testifying truthfully does not render otherwise sound and correct advise objectively unreasonable under the Sixth Amendment.

Petitioner's deceit on the stand is only part of his obstruction of justice. Petitioner had a pattern of falsehoods, which prevent him from establishing with any reasonable probability that the district court would impose a lesser sentence had he either not testified at the suppression hearing or testified truthfully. The sentencing guidelines permit a court to apply a two-level upward adjustment if a defendant "willfully obstructed or impeded, or attempted to obstruct or

12

impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense. . . ." USSG § 3C1.1. Obstructing justice includes providing materially-false incomplete or misleading information for a presentence investigation. Id. cmt. n.5(C). Petitioner met § 3C1.1's definition of obstructing justice by giving multiple, materially-different stories, including telling the probation officer that he unknowingly possessed the crack cocaine because he stole the gift-wrapped packages from a drug dealer in New York.

A defendant may receive a two-level downward adjustment for accepting responsibility for committing an offense. USSG § 3E1.1(a). "Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." USSG § 3E1.1 cmt. n.4 (emphasis added). An example of an extraordinary case is United States v. Lallemand, 989 F.2d 936 (7th Cir. 1993), where the defendant told a friend to destroy evidence in the event the defendant was ever arrested. Once arrested, however, the defendant immediately confessed to the crime, consented to a search of his home, and called the friend to tell him not to destroy the evidence. Petitioner behaved nothing like the defendant in Lallemand to act in such an extraordinary, positive manner to receive an acceptance of responsibility credit despite obstructing justice. Instead, Petitioner's flight from justice for many years and his repeated lies evinced his refusal to accept responsibility for his crime.

## III.

Based on the foregoing reasons, I **RECOMMEND** that Petitioner's § 2255 motion be **DENIED**. The Clerk of Court is directed to immediately transmit the record in this case to the Honorable Jackson L. Kiser, Senior United States District Judge. Both sides are reminded that they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof, pursuant to Rule 72(b), Fed. R. Civ. P. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is further directed to send certified copies of this Report and Recommendation to counsel of record.

Enter: December 10, 2012

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge